## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WENDY SUMMERS, Administrator of the
Estate of Decedent, Courtney McLeod

        *Plaintiff,*

    v.

CITY OF PHILADELPHIA, et al.

        *Defendants.*

CIVIL ACTION
NO. 17-191

**PAPPERT, J.**                                                          **June 26, 2017**

## MEMORANDUM

Courtney McLeod had just begun serving a two to four-year prison sentence at SCI-Graterford when he committed suicide on January 16, 2015. Wendy Summers, McLeod's mother and administratrix of his estate, sued the City of Philadelphia, the Pennsylvania Department of Corrections and various employees and agents of both entities. She brings claims under 42 U.S.C. § 1983 and Pennsylvania state law. In her federal claim, Summers alleges the Defendants violated McLeod's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution as well as his right to be free from cruel and unusual punishment under the Eighth Amendment. Several of the Defendants have filed four motions to dismiss. For the following reasons, the Court grants the motions in part and denies them in part, with leave to amend some of the claims.

## I.

On August 21, 2014, the Philadelphia Police arrested McLeod on burglary-related charges. (Compl. ¶ 77.) Beginning September 5, 2014, following McLeod's

1

guilty plea but before his sentencing, McLeod was alternately housed at three Philadelphia prison facilities: the Curran-Fromhold Correctional Facility, the Philadelphia House of Correction and the health services wing of the Philadelphia Detention Center. (*Id.* ¶¶ 78–79.) After McLeod was sentenced to two to four years of incarceration, he was transferred to SCI-Graterford to serve his sentence. (*Id.* ¶ 102.)

## A.

During his time at the House of Correction, McLeod "had several aggressive or violent encounters with other inmates." (*Id.* ¶ 81.) He also exhibited signs of depression. (*Id.* ¶ 76.) As a result, on October 25, 2014, McLeod received an emergency referral for a psychiatric evaluation. (*Id.* ¶ 82.) Then, on November 3, McLeod attempted suicide by drinking bleach. (*Id.* ¶ 83.) He was treated at Aria Torresdale Hospital and returned to the House of Correction the same day. (*Id.* ¶ 84.) The next day, he consented to inpatient treatment in the prison health services wing of the Philadelphia Detention Center. (*Id.* ¶ 85.) McLeod was prescribed a regimen of Haldol, Benadryl and Ativan to stabilize his mood and decrease his aggression and agitation. (*Id.* ¶ 87.)

Between November 10 and December 10, 2014, McLeod returned to the House of Correction. (*Id.* ¶ 88.) He was transferred back to the Detention Center's health services wing on December 11 when he told several Defendants[1] he intended to commit suicide. (*Id.* ¶ 89.) McLeod remained on suicide watch in the health services wing from December 11 to 14 and was returned to the House of Correction on December 15. (*Id.* ¶¶ 90–92.)

---

[1]     The Complaint alleges McLeod told this to Defendants Louis Giorla, Michele Farrell, John Delaney, William Lawton, Roman Point du Jour, John Does 1–5 and agents or employees of the City of Philadelphia, Valitas Health Services, MHM and ABC Corporations 1–5

On January 7, 2015, McLeod was sentenced to 2 to 4 years of imprisonment. (*Id.* ¶ 93.) He was re-admitted to the Detention Center's health services wing after several Defendants[2] saw him hitting his head against a wall and telling them he was suicidal. (*Id.* ¶ 94.) McLeod was again evaluated on January 11 after telling employees of the Defendants that he wanted to commit suicide. (*Id.* ¶ 99.)

## B.

The City transferred McLeod to SCI-Graterford on January 12, 2015 to serve his sentence. (*Id.* ¶ 102.) The City did not inform the Commonwealth Defendants[3] that McLeod, as recently as the day before his transfer, said he was suicidal. (*Id.* ¶ 101(b).) The City also failed to recommend to the Commonwealth Defendants that McLeod be placed on suicide watch. (*Id.* ¶ 101(c).) The City forwarded McLeod's medical records to SCI-Graterford, but those records indicated only that McLeod had a history of suicide attempts; they did not include McLeod's recent statement that he wanted to commit suicide. (*Id.* ¶¶ 104–05.)

Upon his arrival at SCI-Graterford, McLeod was initially placed in a restricted housing unit where inmates are confined to their cells twenty-three hours per day. (*Id.* ¶¶ 106–07.) He received an "Initial Reception Screening" from Defendant J. Link. (*Id.* ¶ 109.) J. Link concluded that McLeod was bipolar and also noted McLeod had not attempted suicide, was not taking any psychotropic medications and that he needed

---

[2]　　The Complaint alleges that Defendants Giorla, Farrell, Delaney, Lawyton, Point du jour, John Does 1–5 and several employees or agents of Valitas, Corizon, MHM and ABC Corporations 1–5 witnessed McLeod's behavior. (Compl. ¶ 94.)

[3]　　The Defendants in this lawsuit fall into two broad categories: those associated with the City, its prisons, employees and corporate contractors; and those associated with the Commonwealth, its prisons, employees and corporate contractors. The Court, where possible, uses "City Defendants" and "Commonwealth Defendants" to refer to these groups.

neither medical nor psychiatric evaluations. (*Id.*) J. Link approved McLeod for general population housing in the prison. (*Id.* ¶ 110.)

The Complaint alleges that by January 15, 2015, all Defendants knew McLeod was prescribed Haldol, Benadryl and Ativan daily to treat his depression, anxiety disorder and bipolar disorder. (*Id.* at 113.) Despite this alleged knowledge, the Defendants neither provided McLeod with his prescribed medications nor placed him in SCI-Graterford's mental health unit. (*Id.* ¶ 115(d)–(e), (j).) And despite J. Link's recommendation, McLeod remained in the restricted housing unit, confined to his cell twenty-three hours per day. (*Id.* ¶ 115(h).)

On January 16, 2015, Defendants Hardnett, Robinson, Mascellino, John Does 6–10 and ABC Corporations 6–10 were responsible for monitoring McLeod. (*Id.* ¶ 116.) Early that morning, Hardnett discovered McLeod hanging in his cell. (*Id.* ¶ 117.) McLeod, who was nineteen years old, was pronounced dead at 4:30 a.m. by Dr. Stephen Weiner, SCI-Graterford's medical director. (*Id.* ¶¶ 1, 66, 125.)

### C.

Summers now sues the City, Philadelphia Detention Center Warden John Delaney, Curran-Fromhold Warden Michele Farrell, former Philadelphia Prison System Commissioner Louis Giorla, House of Correction Warden William Lawton, Roman Pont du Jour, and Valitas Health Services, Corizon Health, Inc., MHM Correctional Services Inc., MHM Services, Inc., which are companies with whom the City and Commonwealth contract to provide health care services in the prisons. She also sues the Pennsylvania Department of Corrections, Pennsylvania Secretary of Corrections John Wetzel, SCI-Graterford Superintendent Michael Wenerowicz,

Pennsylvania Corrections employees Cynthia Link, George Ondrejka, Joseph Korszniak, J. Link, David Mascellino, Stephen Weiner, Matthew Mauriello, "CO" Robinson and Wexford Health Solutions and Correct Care Solutions LLC under 42 U.S.C. § 1983 for violations of McLeod's constitutional rights. Several of the Defendants filed four separate motions to dismiss.[4] Inasmuch as the motions raise overlapping legal questions, the Court will address them together.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).

---

[4]     The City of Philadelphia, Giorla, Delaney, Lawton and Farrell filed their motion to dismiss on February 24, 2017, (ECF No. 6), and Summers filed her response on March 10, (ECF No. 15). MHM Correctional Services, Inc. and MHM Services, Inc. filed its motion on March 10, (ECF No. 16), to which Summers responded on March 24, (ECF No. 20). Correct Care Solutions, LLC and Weiner filed a motion to dismiss on March 13, (ECF No. 18), and Summers filed a response on March 27, (ECF No. 22). Finally, the Pennsylvania Department of Corrections, Wetzel, Cynthia Link, Ondrejka, Korszniak, J. Link, Mascellino and CO Robinson filed their motion on April 26, (ECF No. 25), and Summers responded on May 8, (ECF No. 27).

Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

## III.

Summers contends that the City Defendants violated McLeod's constitutional rights by transferring him to SCI-Graterford without warning officials there of McLeod's suicidal ideations or recommending that he be placed on suicide watch. *See* (Compl. ¶¶ 100(a)–(c)). To state a § 1983 claim, Summers must allege facts to show that a person acting under color of law deprived McLeod of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Any violation of McLeod's rights must have been done intentionally or with deliberate indifference to those rights. *See, e.g.*, *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

### A.

Summers alleges the City violated McLeod's Fifth, Eighth and Fourteenth Amendments rights. (Compl.¶¶ 79–80, 148.) The City contends that Summers's Eighth and Fourteenth Amendment claims fail because McLeod was not in the City's custody when he committed suicide. (Defs.' Resp., at 10–11 ECF No. 6.) It also asserts that her Fourteenth Amendment claim is barred because the City took no affirmative act to harm McLeod. (*Id.* at 4–7.)

### i.

To the extent that Summers raises substantive due process claims, she cannot state a claim against the City Defendants under the Fifth Amendment. "The Fifth Amendment only applies to actions taken by the federal government, not state or local governments." *Duffy v. County of Bucks*, 7 F. Supp. 2d 569, 576 (E.D. Pa. 1998) (citing

*Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)); *see also Washington-Pope v. City of Philadelphia*, 979 F. Supp. 2d 544, 551 n.1 (E.D. Pa. 2013) ("[T]o the extent [the plaintiff] contends that her Fifth Amendment claim sounds in substantive due process (the only plausible reading of her Complaint based on the facts presented), she must rely instead on the Fourteenth Amendment's Due Process Clause, which applies to state and local actors, rather than the Fifth Amendment's Due Process Clause, which applies to federal actors."). Summers's Fifth Amendment claims against the City and individual City Defendants are dismissed with prejudice.

### ii.

Summers's substantive due process claims under the Fourteenth Amendment are barred by the "more-specific-provision rule" and must be dismissed with prejudice because the Eighth Amendment applies to the City Defendants' alleged conduct. The "more-specific-provision rule" directs that "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

The City contends the Eighth Amendment is inapplicable because McLeod was not in their custody when he committed suicide. But Summers's allegations relate to the City's acts and omissions while McLeod was in its custody. Namely, she contends that the City acted with deliberate indifference in transferring Summers to SCI-Graterford without warning officials there that he had stated his desire to kill himself as recently as the day before. (Compl. ¶¶ 100(a)–(c), 105.) McLeod's physical location

at the time of his suicide is not determinative of whether the Eighth Amendment applies to the particular facts alleged in this case. Instead, traditional tort principles of but-for and proximate causation guide the § 1983 analysis. *See Egervary v. Young*, 366 F.3d 238, 264 (3d Cir. 2004) (citing *Hector v. Watt*, 235 F.3d 154, 160 (3d Cir. 2001)).

Moreover, McLeod had pled guilty and been sentenced and therefore enjoyed Eighth Amendment protection at the time of the City's alleged deliberate indifference. (Compl. ¶¶ 93, 100); *see also e.g.*, *Imhoff v. Temas*, 67 F. Supp. 3d 700, 709 (W.D. Pa. 2014) ("Once convicted, the Eighth Amendment . . . imposes a duty on prison officials . . . .") (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 ("Because there had been no formal adjudication of guilt against [the prisoner] at the time he required medical care, the Eighth Amendment has no application.").

The City points to *Coscia v. Town of Pembroke, Mass.*, 659 F.3d 37, 41 (1st Cir. 2011) (Souter, J.), for the proposition that "it is substantive due process that must account for any requirement that the government answer for harm that is avoidable after the official restriction has ceased." *Coscia*, however, dealt with a pretrial detainee, *see id.* at 38–39, and must be read in that context. Because the Eighth Amendment does not apply to pretrial detainees, *City of Revere*, 463 U.S. at 244, it could not have accounted for any requirement that the government answer for avoidable harms *in that situation*. *Cf. also Coscia*, 659 F.3d at 41.

### iii.

Summers's Eighth Amendment § 1983 claims against the City are analyzed under the standard for municipal liability set forth in *Monell v. Dep't of Social Servs. of*

*the City of N.Y.*, 436 U.S. 658 (1978). A municipality generally will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, municipal liability under § 1983 exists only when a constitutional injury results from a city's official policy or informal custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658). A plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

To prevail against the City, Summers must point to an official policy or informal custom that was deliberately indifferent to McLeod's Eighth Amendment rights, *see Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059 (3d Cir. 1991), and "must . . . specify what exactly that custom or policy was." *McTernan,* 564 F.3d at 658 (3d Cir. 2009). She has not done so. She instead alleges that various City Defendants "established and maintained policies, practices or customs which caused McLeod's suicide when they . . . [a]llowed McLeod to be transferred to SCI-Graterford on January 12, 2015." (Compl. ¶ 100(a).) Summers alleges *the results* of a policy, but does not articulate what the alleged unconstitutional policy actually is. These allegations are insufficient and Summers's *Monell* claim against the City is dismissed.

## B.

Summers also sues several individual City officials, in both their official and personal capacities. She sues Philadelphia Detention Center Warden John Delaney, House of Correction Warden William Lawton, Curran-Fromhold Correctional Facility Warden Michele Farrell and former Commissioner of the Philadelphia Prison System

Louis Giorla. Summers contends that these officials violated McLeod's constitutional rights by allowing McLeod to be transferred to SCI-Graterford and failing to warn SCI-Graterford of McLeod's stated intent to commit suicide.

"Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law." *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Official capacity suits, however, are just another way of pleading an action against an entity of which an officer is an agent." *Id.*; *see also Monell*, 436 U.S. at 690 n.55. Thus if "the governmental entity receives notice of the suit and an opportunity to respond to it, an official-capacity suit is, in all respects, to be treated as a suit against the government entity itself." *Id.* (citing *Graham*, 473 U.S. at 166). To the extent Summers sues Delaney, Lawton, Farrell and Giorla in their official capacities, her claims are redundant with her claim against the City itself and are dismissed with prejudice. *See, e.g.*, *Wimbush v. City of Philadelphia*, No. 16-05783, 2017 WL 1355174, at *4 (E.D. Pa. Apr. 13, 2017).

To the extent Summers sues the individual City Defendants in their personal capacities, she must demonstrate their personal involvement in the alleged violations of McLeod's constitutional rights. Section 1983 "liability cannot be predicated solely on the operation of respondeat superior." *Chimenti v. Pa. Dep't of Corrs.*, No. 15-3333, 2016 WL 1125580, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Evancho v. Fisher*, 423 F. 3d. 347, 353 (3d Cir. 2005)). Summers can show the personal involvement of defendants by alleging facts under either of two theories: (1) a supervisor's personal direction or actual knowledge and acquiescence in a constitutional violation, *id.* (quoting *Evancho*, 423

F.3d at 353); or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation, *Brown v. May*, No. 16-01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017). A conclusory allegation that a defendant was "directly involved," however, is insufficient to allege personal involvement. *Id.* (citing *Bush v. Dep't of Hum. Servs.*, 614 F. App'x 616, 620 (3d Cir. 2015)).

To state an Eighth Amendment prison-suicide claim Summers must allege facts to plausibly show: (1) McLeod had a particular vulnerability to suicide; (2) his custodial officers knew or should have known about that vulnerability; and (3) those officers acted with reckless indifference to his particular vulnerability.[5] *Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017). The individual City Defendants contend that Summers inadequately alleges their personal involvement in any constitutional violations under this framework. In response, Summers points to the portions of her Complaint that allege the defendants "personally acted" under color of state law to deprive McLeod of his constitutional rights. (Pl.'s Resp. at 16, ECF No. 15.) That conclusory allegation is not enough. *See Chimenti*, 2016 WL 1125580, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Bush*, 614 F. App'x at 620). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Summers's claims against Delaney, Lawton, Farrell and Giorla in their personal capacities are dismissed.[6]

---

[5] This framework applies only to the extent a plaintiff sues a defendant for failing to prevent a prison suicide. *Palakovic*, 854 F.3d at 224. It does not, however, preclude other types of claims, even if those claims also relate to an individual who committed suicide while in prison. *Id.* at 224–25.

[6] The individual City Defendants also raise a qualified immunity defense. (Defs.' Mem., at 7–8, ECF No. 6.) The Supreme Court has instructed in the qualified immunity context that "[c]ourts

## C.

Summers also sues MHM Correctional Services, Inc. and MHM Services, Inc. She alleges MHM was responsible for providing healthcare and mental-health services to the prisoners and pretrial detainees at the City's prisons. MHM asserts that Summers's claim against it must be dismissed because Summers has not alleged with sufficient specificity a policy or custom of the corporation. Summers contends that she has pointed to specific policies of MHM and therefore that her claim should survive a motion to dismiss.

To hold a private corporate defendant liable under § 1983, a plaintiff must show that the corporation was acting under the color of law and that the constitutional violation arose from the corporation's official policy or custom. *Milliner v. Diguglielmo*, 2011 WL 2357824, at *6 (E.D. Pa. June 8, 2011) (citing *Natale*, 318 F.3d at 583–84). Summers alleges that MHM, along with the other City Defendants, "established and maintained policies, practices or customs which caused McLeod's suicide." (Compl. ¶ 100.) That is insufficient. *See McTernan*, 564 F.3d at 658; *supra*, at 10–11. Summers alleges only that policies existed, which resulted in failing to inform the other Defendants that McLeod was suicidal and failing to recommend that he be placed on suicide watch. (Compl. ¶¶ 100(b)–(c).)[7] Summers's claims against MHM are dismissed.

---

should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted). In light of that instruction, and considering that Summers has not yet adequately alleged the personal involvement of any individual City Defendants and will be granted leave to amend her Complaint, the Court will not address qualified immunity at this time.

[7]    While Summers points to her allegations in Paragraph 123 of the Complaint, which alleges that "all Defendants" held certain policies or customs, the alleged policies clearly relate to the harm done at SCI-Graterford, not to any role MHM played at the City's prisons. *See* (*id.* ¶ 123).

## IV.

Summers also brings claims against the Commonwealth Department of Corrections ("DOC") and its employees and agents for constitutional violations arising from McLeod's suicide while at SCI-Graterford. Several Commonwealth Defendants have moved to dismiss those claims.[8]

### A.

The DOC contends that the Eleventh Amendment bars Summers's suit against it and moves to dismiss Summers's claims under Rule 12(b)(1). The Eleventh Amendment clarifies that states have immunity from damages suits brought by individuals in federal courts. Accordingly, federal courts lack jurisdiction over such claims. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). Federal suits to recover damages against subordinate state agencies are similarly barred by the Amendment. *Id.*; *Durham v. Dep't of Corrs.*, 173 F. App'x 154, 156 (3d Cir. 2006) (citing *Mt. Healy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). The Amendment also bars damages suits in federal court against state officials sued in the official capacities, because those suits are "no different from . . . suit[s] against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Commonwealth has not waived its sovereign immunity in this case. Although the Commonwealth has waived immunity for certain classes of claims brought in state court, *see* 42 Pa. C.S.A. § 8522(b) (listing nine exceptions to the Commonwealth's sovereign immunity), it has expressly retained its Eleventh Amendment immunity from suit in federal court, *id.* § 8521 ("Nothing contained in this

---

[8]   *See supra* note 4.

subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also Rivera v. Thomas*, No. 16-1493, 2017 WL 1134116, at *3 (E.D. Pa. Mar. 27, 2017); *Odi v. Alexander*, No. 15-4903, at *6 (E.D. Pa. Mar. 7, 2017) ("Pennsylvania has not waived its immunity to Section 1983 suits.").

Summers does not respond to the Commonwealth's immunity argument and her claims against the DOC are dismissed with prejudice. Similarly, her claims against Defendants Wetzel, J. Link, Ondrejka, Korszniak, Weiner and Cynthia Link in their official capacities are dismissed with prejudice.[9]

## B.

Summers also sues DOC officers Wetzel, Wenerowicz, Link, Ondrejka, Korszniak, Link and Mascellino in their personal capacities. As with the City Defendants, McLeod must plausibly allege that the individual Commonwealth Defendants were personally involved in the alleged violations of McLeod's constitutional rights. *See, e.g.*, *Chimenti*, 2016 WL 1125580, at *5 (citing *Evancho*, 423 F. 3d. at 353). Summers alleges that the individual Commonwealth Defendants violated McLeod's rights by, among other things, restricting him to his cell for twenty-three hours per day, failing to adequately treat his mental illness while they knew or should have known that he was at risk of suicide and failing to train and supervise those tasked with monitoring McLeod. *See* (Compl. ¶ 115). Before examining the personal involvement of these Defendants, the Court will examine whether Summers has adequately alleged any underlying constitutional violations.

---

[9] *See supra* Section III.B.

**i.**

Summers's allegations are rooted in three constitutional provisions. First, she contends the individual Commonwealth Defendants violated McLeod's Fifth Amendment due process rights. Next, she contends they violated his Eighth Amendment right to be free from cruel and unusual punishment. Finally, Summers contends they violated McLeod's Fourteenth Amendment due process rights. Summers's Fifth Amendment claims and his Fourteenth Amendment substantive due process claims must be dismissed with prejudice for the same reasons as against the City Defendants. *See supra* subsection II.A.ii.

Again, to state a claim under the Eighth Amendment in the prison-suicide context, Summers must allege facts that show: (1) McLeod had a particular vulnerability to suicide; (2) his custodial officers knew or should have known about that vulnerability; and (3) those officers acted with reckless indifference to his particular vulnerability. *Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017).

A particular vulnerability to suicide requires a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Colburn*, 946 F.2d at 1024 (citing *Torraco v. Maloney*, 923 F2d 231, 236 (1st Cir. 1991); *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990)). This likelihood "must be so obvious that a lay person would easily recognize the necessity for preventative action." *Id.* at 1025 (internal quotations omitted). Summers alleges abundant facts to demonstrate McLeod's particular vulnerability to suicide. McLeod received an emergency referral for a psychiatric evaluation due to his depression, (Compl. ¶ 82), previously attempted

suicide by drinking bleach, (*id.* ¶ 83), was placed on suicide watch, (*id.* ¶ 91), and spoke openly about his desire to commit suicide while in the City's custody, (*id.* ¶ 99).

Summers also alleges facts to show that McLeod's custodians knew or should have known of McLeod's particular vulnerability. "Custodians have been found to 'know' of a particular vulnerability to suicide when they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Colburn*, 946 F.2d at 1025 n.1. While McLeod's first suicide attempt occurred in the City's custody, Summers alleges that his medical records, which included his history of suicide attempts, were forwarded to McLeod's custodians at the DOC. *See* (Compl. ¶ 104). This suffices to plausibly show the Commonwealth Defendants' knowledge of McLeod's particular vulnerability to suicide.

Despite this knowledge, the individual Commonwealth Defendants placed McLeod in a restricted housing unit, confining him to his cell twenty-three hours per day. (*Id.* ¶ 107.) They also failed to provide McLeod with his prescribed medications, (*id.* ¶ 115(d)–(e)), failed to refer him to a mental health unit at the prison, (*id.* ¶ 115(i)–(j)), and failed to monitor him, (*id.* ¶ 115(k)). "[W]hen the factual scenario presented by a plaintiff suggests that [the defendant] should have known that a prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal." *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988). Summers has stated a claim for violations of McLeod's Eighth Amendment rights.

The individual Commonwealth Defendants contend that the Complaint alleges insufficient facts as to when McLeod's records were received from the City and who received them. *See* (Defs.' Mot., at 10, ECF No. 25). It would be unreasonable to demand that Summers plead such specific details at this stage in the proceedings. Summers has pleaded "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements" of her Eighth Amendment claims. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

### ii.

Summers must still allege personal involvement on the part of the individual Commonwealth Defendants. Certain of the Defendants are not alleged to have been personally involved in the violation of McLeod's constitutional rights. Summers does not, for example, allege that Wetzel, Cynthia Link, Ondrejka or Korszniak were personally involved in this violation. Wetzel is DOC Secretary, and therefore responsible for managing the Commonwealth's correctional facilities, including SCI-Graterford. (Compl. ¶¶ 25–26.) Summers's prison-suicide allegations about him are generalized; the paragraphs of the Complaint that mention him group him with multiple other individual Commonwealth Defendants as having established and maintained nondescript policies that resulted in McLeod's suicide. *See* (*id.* ¶ 157). This undermines any argument that Wetzel was personally involved in depriving McLeod of his Eighth Amendment rights.

The same may be said of Cynthia Link. Link is the Deputy Superintendent of Centralized Services at SCI-Graterford. (Compl. ¶ 33.) She is responsible for directing

and managing the operations of SCI-Graterford, including the health, safety and welfare of the inmates there. (*Id*.) Like Wetzel, the allegations against Link are lumped with allegations about myriad other defendants; they do not show how Link was personally involved. *See* (Compl. ¶¶ 117, 156–58).

Nor does the Complaint plausibly allege that George Ondrejka or Joseph Korszniak were personally involved in violating McLeod's rights. Ondrejka is SCI-Graterford's Deputy Superintendent of Internal Security. (*Id*. ¶ 36.) Korszniak is the Correctional Health Care Administrator at SCI-Graterford. *See* (*id*. ¶¶ 38–39, 107–08, 117, 156–57). The allegations regarding Korszniak and Ondrejka are grouped with all other potentially relevant defendants; that does not plausibly allege their personal involvement.

Dr. Stephen Weiner, D.O. is SCI-Graterford's medical director. Weiner's role is similarly aggregated with all other potentially relevant defendants—none of the facts alleged tend to show his personal involvement. In any event, the Complaint is unclear whether Weiner was an employee of the Commonwealth DOC or a contractor through Defendant Correct Care Solutions, LLC. *See* (*id*. ¶ 66). The Complaint is similarly unclear regarding who David Mascellino works for and what his duties entail. In any event, nothing in the Complaint plausibly supports his personal involvement in the violation of McLeod's constitutional rights.

Summers also alleges that Wetzel, Link, Ondrejka, Korszniak, Mascellino and Weiner all personally developed the policy or custom of confining prisoners in restricted housing to their cells for twenty-three hours per day. (Compl. ¶ 107.) However, by casting a blanket allegation that all named defendants at the DOC had personal

involvement in developing that policy, the Complaint fails to plausibly allege that any one of them was the final policymaker.

Summers alleges sufficient facts to show the personal involvement of two of the moving Defendants. First, she alleges that upon McLeod's arrival at SCI-Graterford, J. Link performed an "initial reception screening" on him. (*Id.* ¶ 108.) As part of that screening, J. Link noted that McLeod was bipolar, that he had *not* attempted suicide—in contrast to the City records the DOC allegedly received, *see* (*id.* ¶ 104)—that he was *not* taking any psychotropic medications, and that McLeod needed neither a medical nor psychiatric evaluation, (*Id.* ¶ 109). J. Link then cleared McLeod to be placed in SCI-Graterford's general population. (*Id.* ¶ 110.) Summers has sufficiently alleged J. Link's personal involvement in the violation of McLeod's constitutional rights. She also plausibly alleges that Robinson was "responsible for monitoring and safeguarding McLeod at the time of his suicide." (*Id.* ¶ 116.) The individual Commonwealth Defendants' motion is denied to the extent it relates to J. Link and Robinson and granted with respect to the other moving Defendants.

### iii.

Summers also asserts claims against all Defendants under a failure to train theory.[10] *See* (*id.* ¶ 123(b)). Such claims are "analyzed as a species of 'custom or practice' liability." *Owens v. City of Philadelphia*, 6 F. Supp. 2d 373, 387 (E.D. Pa. 1998). "[A] policy or custom may . . . exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in

---

[10]     This allegation clearly applies to the Commonwealth Defendants. *See* (Compl. ¶ 123(a)–(c)). The Commonwealth itself is immune from this claim. *See supra* Section IV.A.

the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (quotations omitted).

A claim for supervisor liability for failure to train requires that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Such a failure gives rise to a constitutional violation only where it "amounts to deliberate indifference." *Montgomery v. De Simone*, 159 F.3d 120, 126–27 (3d Cir. 1998). While Summers need not prove these elements at this stage of the proceeding, she must allege facts to make these elements plausible.

Summers's failure to train claim has a fatal flaw—it does not identify a specific policymaker responsible for the failure to train. *See Simmons*, 947 F.2d at 1060–61. She instead alleges that "all Defendants . . . [f]ailed to take measures to alter their policies." (Compl. ¶ 123.) Such a broad allegation does not allege a specific policymaker responsible for the failure; her claim is dismissed.

### C.

Summers also sues Correct Care Solutions, LLC and alleges that the company was responsible for providing healthcare and mental health services to the prisoners and pretrial detainees at the Commonwealth's prisons. Correct Care contends that the claims against it must be dismissed because, among other things, Summers has not

alleged a policy or custom of the corporation with sufficient specificity. (Defs.' Mot., at 11, ECF No. 18.)

To hold Correct Care liable under § 1983, Summers must show that the company acted under color of law and that any constitutional violation arose from the company's official policy or custom. *Natale*, 318 F.2d at 583–84. Summers alleges that Correct Care, along with the DOC, Wetzel, Wenerowicz, Link, Ondrejka, Korszniak, Mascellino, Wexford, Weiner, John Does 6–10 and ABC Corporations 6–10 developed the policy of confining prisoners in restricted housing to their cells twenty-three hours per day. (Compl. ¶ 107.)

While Summers has alleged a sufficiently specific policy, she fails to allege who at Correct Care was ultimately responsible for this policy. In the absence of allegations supporting the existence of a policy or custom and identifying a policymaker, her claims against Correct Care fail. *See, e.g.*, *Hope v. Fair Acres Geriatric Ctr.*, No. 15-06749, 2016 WL 1223063, at *6 (E.D. Pa. Mar. 29, 2016) (dismissing *Monell* claim where plaintiff failed to identify a policymaker).

## V.

Summers also brings two state-law causes of action. She alleges violations of the Pennsylvania Wrongful Death and Survival Act, found in 42 PA. CONS. STAT. ANN. §§ 8301–02. These statutes do not create a freestanding cause of action or "a new theory of liability, but merely allow[ ] a tort claim of the decedent to be prosecuted." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 741 (3d Cir. 2004).

To the extent that Summers brings wrongful death and survival actions against the City and the individual City Defendants as state tort claims, rather than as § 1983

claims, her claims are dismissed. Municipal employees are liable for civil damages only to the same extent as the local agency would be. 42 PA. CONS. STAT. ANN. § 8545. Municipalities enjoy immunity from damages except in instances of actual malice or willful misconduct. *See id.* §§ 8541 (providing for tort immunity for local agencies), 8550 (actual malice and willful misconduct exceptions). Summers has not alleged facts which could plausibly rise to the level of actual malice or willful misconduct by any of the City Defendants.

To the extent that Summers's § 1983 claims against the other Defendants are dismissed, her claims under the Wrongful Death and Survival Act must be dismissed as well. *See Bright*, 380 F.3d at 741.

With regard to Summers's surviving claims, her claims under the Wrongful Death and Survival Act may proceed at this early stage. While the Defendants are correct that those claims are not freestanding causes of action and must instead be predicated on an underlying claim, several courts in this circuit have permitted such claims to proceed to discovery when based on a § 1983 claim. *See, e.g.*, *Becker v. Carbon Cty.*, 177 F. Supp. 3d 841 (M.D. Pa. 2016) ("At this early stage of the proceedings, without guidance from the Third Circuit, I cannot say, as a matter of law, that Plaintiff is not entitled to pursue a claim under Pennsylvania's wrongful death statute."); *DeJesus v. City of Lancaster*, No. 14-3477, 2015 WL 1230319, at *3 (E.D. Pa. Mar 17, 2015) (permitting wrongful death claim predicated on § 1983 claim to proceed and noting that "[a]fter discovery, the parties may address the propriety of these claims").

## VI.

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing FED. R. CIV. P. 15(a)). Summers is free to amend her Complaint consistent with the attached order.

An appropriate Order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.