IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WENDY SUMMERS, Administrator of the Estate of Decedent, Courtney McLeod<br><br>      *Plaintiff,*<br><br>   v.<br><br>CITY OF PHILADELPHIA, *et al.*<br><br>      *Defendants.* | CIVIL ACTION<br>NO. 17-191 |

**PAPPERT, J.**                                                                                                                                                                                                                                                                                      **March 16, 2018**

## MEMORANDUM

Courtney McLeod had just begun serving a two to four-year prison sentence at SCI-Graterford when he committed suicide on January 16, 2015. Wendy Summers, McLeod's mother and administratrix of his estate, sued various defendants[1] under 42 U.S.C. § 1983 and Pennsylvania state law, alleging failure to train and violations of McLeod's Fourteenth, Eighth and Fifth Amendment rights under the United States Constitution. (Compl., ECF No. 1.) A number of the defendants filed motions to dismiss. (ECF Nos. 6, 16, 18, 25.)

On June 26, 2017, the Court granted the motions in part and denied them in part, with leave to amend some of the claims. Specifically, the Court dismissed with prejudice certain claims against the individual City Defendants in their official

---

[1] Relevant to this Memorandum, the defendants included: (1) former Philadelphia Prison System Commissioner Louis Giorla, Philadelphia Detention Center Warden John Delaney, Curran-Fromhold Warden Michele Farrell, and House of Correction Warden William Lawton ("individual City Defendants"); (2) MHM Correctional Services, Inc. and MHM Services, Inc.; (3) Correct Care Solutions, LLC and Dr. Stephen Weiner; (4) Corizon Health and Roman Point du Jour, an employee of Corizon; and (5) the Pennsylvania Department of Corrections ("DOC") and a number of Commonwealth employees ("Commonwealth Defendants"). (Compl., ECF No. 1.)

1

capacities and claims against the Pennsylvania DOC.[2] *See Summers v. City of Philadelphia*, No. 17-191 WL 2734277, at *6 (E.D. Pa. June 26, 2017). Claims against the individual City and some Commonwealth Defendants in their personal capacities were dismissed for failure to sufficiently allege the personal involvement of those Defendants in any underlying constitutional violation.[3] *Id.* at 6, 9. Claims against MHM were dismissed for failure to sufficiently allege a specific policy that caused the constitutional violation, while claims against Correct Care were dismissed for failure to sufficiently allege the existence of a policy or identify a policymaker responsible for any alleged policies. *Id.* at 10. Finally, Summers's failure to train claim against all Defendants was dismissed because she did not identify a policymaker. *Id.* at 10. Summers was granted leave to amend some of the claims.

Summers accordingly filed an Amended Complaint on August 25, 2017, which asserts just one count for failure to train and for failure to prevent suicide under the Eighth Amendment.[4] (Am. Compl., ECF No. 36.) The individual Commonwealth Defendants answered on September 15, 2017, (Answer, ECF No. 42), but several Defendants again moved to dismiss the claims against them, including: (1) the

---

[2] Claims against the individual City Defendants in their official capacity were dismissed with prejudice because those claims were redundant of Summers's claims against the City. *See, e.g.*, *Wimbush v. City of Philadelphia*, No. 16-05783, 2017 WL 1355174, at *4 (E.D. Pa. Apr. 13, 2017). Her claims against the DOC were dismissed with prejudice because they were barred by the Eleventh Amendment. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 45 (1996).

[3] Claims against J. Link and Robinson survived dismissal. *See Summers*, 2017 WL 2734277, at *9.

[4] The failure to train claim is only asserted against Wetzel, Wenerowicz and Link, (Hr'g Tr. at 85:5–86:11, ECF No. 52), who already answered the Amended Complaint. (Answer, ECF No. 42.)

2

individual City Defendants who work for the City prisons[5] (Mot. to Dismiss, ECF No. 37); (2) MHM (Mot. to Dismiss, ECF No. 38); (3) Correct Care and Dr. Stephen Weiner (Mot. to Dismiss, ECF No. 39); (4) Corizon Health (Mot. to Dismiss, ECF No. 45); and (5) Roman Point du Jour (Mot. to Dismiss, ECF No. 46). The Court heard oral argument on the motions, (ECF No. 52), and grants them for the following reasons.

I

The facts of this case are set forth in detail in the Court's June 26, 2017 Memorandum. Summarized very briefly, Summers alleges that while in the City prisons her son attempted suicide and stated that he was suicidal. The attempt came more than two months before his transfer to SCI-Graterford and his statement was made the day before that transfer. (Am. Compl. ¶¶ 78, 94, 95.) Despite knowing this, the individual City Defendants transferred McLeod to SCI-Graterford without recommending that he be placed on suicide watch. (*Id.* at ¶¶ 96, 97.) McLeod was then placed in solitary confinement at SCI-Graterford and during his brief time there allegedly received inadequate mental health care treatment, which led to his suicide. (*Id.* at ¶¶ 96–98, 130, 134.)

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the

---

[5]  The Court uses "City prisons" to refer collectively to the Philadelphia Detention Center, Curran-Fromhold and the House of Correction.

3

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

The plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a

4

complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

II

A

Summers contends the individual City Defendants violated McLeod's Eighth Amendment rights by transferring him to SCI-Graterford without warning officials there of McLeod's suicidal ideations or recommending that he be placed on suicide watch. *See* (Am. Compl. ¶¶ 96, 97). Summers's claims against the City Defendants were previously dismissed for failing to allege, with the appropriate level of particularity, their involvement in the purported constitutional violation. *See Summers*, 2017 WL 2734277, at *6. In her Amended Complaint, Summers conclusorily alleges that Giorla, "as policymaker for the City of Philadelphia Prison System," established policies or customs of transferring suicidal prisoners, failing to inform transferee institutions that a prisoner is suicidal, and failing to recommend that a prisoner be placed on suicide watch. (Am. Compl. ¶ 96.) Similarly, Summers alleges that Farrell, Delaney and Lawton implemented these policies or customs by directing that McLeod be transferred to SCI-Graterford and failing to recommend that he be placed on suicide watch. *See* (*id.* at ¶ 97). The individual City Defendants contend that

5

Summers fails to state an Eighth Amendment failure to prevent suicide claim, insufficiently alleges their personal involvement,[6] and that in any event they are protected from liability by qualified immunity. *See* (Mot. to Dismiss at 5–8, ECF No. 37).

To state a claim for failure to prevent suicide under the Eighth Amendment, Summers must allege facts to plausibly show: (1) McLeod had a particular vulnerability to suicide, meaning a "strong likelihood" of suicide that is "so obvious that a lay person would easily recognize the necessity" for preventative action; (2) the prison official knew or should have known about that vulnerability; and (3) the official acted with reckless or deliberate indifference to McLeod's particular vulnerability. *Palakovic v. Wetzel*, 854 F.3d 209, 222–24 (3d Cir. 2017) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1024 (3d Cir. 1991)). To act with reckless or deliberate indifference requires "a relatively high level of culpability" before holding prison officials accountable under the vulnerability to suicide framework. *Id.* at 222.

Summers fails to state an Eighth Amendment claim against the individual City Defendants because their alleged conduct does not constitute reckless or deliberate indifference. In *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111 (3d Cir. 1988), Jerry Freedman appeared at the Allentown Police Station and was questioned for two and a half hours by police detective Carl Balliet over possible violations of the "State Prescription Law." 853 F.2d at 1113. In the midst of the interrogation, Balliet called

---

[6] At oral argument, Plaintiff's counsel admitted that the Eighth Amendment claim should have been brought solely against Defendants Giorla and Delaney, since McLeod was transferred from the Detention Center, where Delaney was the warden, to SCI-Graterford. *See* (Am. Compl. ¶ 95). Because McLeod was transferred between those two institutions, Lawton and Farrell, wardens at the House of Correction and Curran-Fromhold respectively, could not have participated in the decision to transfer McLeod. (Hr'g Tr. at 38:24–40:23.)

6

Frank Kroboth, Freedman's state probation officer. *Id.* Kroboth allegedly knew that Freedman had previously attempted suicide and had suicidal ideations, but did not tell Balliet that. *Id.* Freedman was then arrested by Balliet and placed in an isolated cell, where he hung himself. *Id.*

As the administrator of his son's estate, Freedman's father sued the City of Allentown, Balliet, Kroboth and others. The District Court dismissed the complaint and the Third Circuit affirmed the dismissal. *Id.* As to Kroboth, the appellate court held that Kroboth's failure to warn Balliet of Freedman's history and suicidal tendencies was, at most, negligence. *Id.* at 1117. Although "a reasonably prudent probation officer, knowing that Freedman was being questioned or had been detained, would have cautioned the detaining officers about Freedman's prior suicide attempt and suicidal tendencies," the failure to do so did not rise "above negligence to a reckless indifference of Freedman's rights." *Id.* at 1117.

Here, Summers contends that the City Defendants acted with reckless indifference by directing or allowing McLeod's transfer to SCI-Graterford without warning officials that he had recently attempted and threatened suicide, and without recommending that he be placed on suicide watch. *See* (Am. Compl. 96, 97, 102). Summers also alleges that the individual City Defendants informed Graterford of McLeod's history of suicide attempts (albeit without information concerning the most recent threat) by providing Graterford with McLeod's medical records which contained that information. (Am. Compl. ¶ 102.) McLeod also received an initial screening upon admission to Graterford to determine whether a medical or psychiatric evaluation was required. (*Id.* at ¶¶ 106, 107.) While it would have been prudent to inform SCI-

7

Graterford of McLeod's recent suicide attempt and threat, and recommend that he be placed on suicide watch, the City Defendants' conduct did not, under Third Circuit precedent, constitute reckless indifference.[7] Inasmuch as Summers fails to state a claim for violations of the Eighth Amendment, the Court needn't address the City Defendants' qualified immunity argument.

B

Summers's previous claims against MHM, the corporation responsible for providing mental health services to inmates at the City prisons and SCI-Graterford, were dismissed for failing to sufficiently allege a policy that caused an Eighth Amendment violation. *See Summers*, 2017 WL 2734277, at *6. Summers now contends that MHM was involved in the decision to transfer McLeod without recommending he be placed on suicide watch, and developed policies or customs of providing inadequate mental health care treatment at SCI-Graterford. (Am. Compl. ¶¶ 75, 98.) MHM argues that Summers fails to sufficiently allege its personal involvement, or a policy or custom that caused the alleged constitutional violation. *See* (Mot. to Dismiss at 5–6, ECF No. 38).

To hold a private corporate defendant liable under § 1983, a plaintiff must allege that the corporation was acting under color of law and had "a policy or custom that

---

[7]   Summers also seeks to hold the individual City Defendants liable as supervisors. "[A] plaintiff may state an Eighth Amendment claim against a supervisor based on policies or practices where the plaintiff alleges that the supervisors 'knew or were aware of and disregarded an excessive risk to the [plaintiff's] health or safety[.]'" *Palakovic*, 854 F.3d at 233 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001)). Summers alleges that the City Defendants were responsible for the policy or practice of transferring suicidal inmates without recommending that the inmate be placed on suicide watch. *See* (Am. Compl. ¶¶ 96, 97). Such "naked assertions devoid of further factual enhancement" are insufficient for the Court to draw a reasonable inference that the City Defendants established that policy or practice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, Summers's claim fails because she does not allege that the City Defendants knew that a policy or practice of transferring suicidal inmates would increase the risk of suicide, and that despite having that knowledge, they did nothing. *See Palakovic*, 854 F.3d at 233.

resulted in the alleged constitutional violations at issue." *Palakovic*, 854 F.3d at 232 (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003)). A policy is made "when a decisionmaker possess[ing] final authority to establish…policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices…are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted).

Summers concludes that MHM was involved in the decision to transfer McLeod to SCI-Graterford, (Am. Compl. ¶¶ 75, 98), but does not allege any facts to support this conclusion or render the claim plausible. *See Schuchadt*, 839 F.3d at 347. Even if MHM were involved in that decision, its conduct was not recklessly indifferent to McLeod's Eighth Amendment rights. SCI-Graterford was informed of McLeod's history of suicide attempts, and McLeod received a screening upon his arrival at SCI-Graterford. (Am. Compl. ¶¶ 102, 106, 107.) *See supra* II.A. Moreover, these allegations are insufficient to establish a policy or custom attributable to MHM because Summers fails to identify a policymaker with final decisionmaking authority for MHM, and the one-time decision to transfer McLeod is insufficient to establish a custom. *See Andrews*, 895 F.2d at 1480.

Summers also alleges that MHM established a practice or custom at SCI-Graterford of "providing the absolute minimum of health and/or mental health care[;] failing to provide timely psychiatric assessments of prisoners in need [of] mental health services; failing to implement a procedure to ensure that prisoners at SCI-

9

Graterford…received [mental health] services; [and] failing to ensure that potentially suicidal patients be properly monitored[.]" (Am. Compl. ¶ 98.) Such allegations are similar to those made against MHM in *Palakovic*. There, Brandon Palakovic, a mentally ill prisoner at SCI-Cresson, committed suicide after repeatedly being placed in solitary confinement. *Palakovic*, 854 F.3d at 215. The Palakovics, as administrators of their son's estate, sued MHM alleging that MHM had a custom of understaffing, providing inadequate mental health care treatment, and warehousing suicidal inmates in solitary confinement at SCI-Cresson. *Id.* at 232. The Palakovics supported these allegations by pointing to specific factual findings from a Department of Justice ("DOJ") investigation into the mental health care practices at Cresson. The investigation consisted of a three-day site visit during Brandon's incarceration, and included interviews with administrative staff, medical staff and prisoners. *Id.* at 218. The subsequent report revealed "systematic deficiencies in SCI Cresson's treatment of mentally ill and intellectually disabled prisoners," and found that the mental health care at Cresson was deficient due to insufficient staffing and poor screening and diagnostic procedures. *Id.* at 233.

Summers makes no such allegations and does not allege any facts in support of the conclusion that MHM had a custom of providing inadequate mental health care treatment at SCI-Graterford. Again, a claim has facial plausibility to survive a motion to dismiss when "the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Summers does not plead any factual support for the conclusion that MHM had a custom of providing inadequate mental health care

treatment at SCI-Graterford, and the Court cannot reasonably conclude that such a custom existed. *See, e.g.*, *Santiago v. Warminster Tp.*, 629 F.3d 121, 131–32 (3d Cir. 2010) (discussing conclusory statements unsupported by further factual content).

C

Summers's previous claims against Correct Care Solutions and Dr. Stephen Weiner, its Medical Director at SCI-Graterford, were dismissed because she failed to allege facts supporting the existence of a policy or policymaker, and Wiener's personal involvement was not alleged with sufficient particularity. *See Summers*, 2017 WL 2734277, at *10.

In her Amended Complaint, Summers alleges that Correct Care had policies of confining mentally ill inmates to restricted housing twenty-three hours per day, failing to have prisoners receive timely psychiatric evaluations, allowing mentally ill prisoners to participate in a self-medication program without ensuring medications are taken, and improperly monitoring suicidal prisoners. (*Id.* at ¶¶ 60, 105, 130.) These conclusory assertions are unsupported by facts which allow the Court to reasonably infer the existence of such policies. *See Summers*, 2017 WL 2734277, at *10. Moreover, Summers has still not sufficiently alleged a policymaker for Correct Care. She asserts that Weiner was "ultimately responsible for developing, forming and implementing" Correct Care's policies. *See* (Am. Compl. ¶¶ 60, 130.) She does not allege facts that support her conclusion that Weiner had final and unreviewable authority in the area of mental health care treatment at SCI-Graterford. *See Andrews*, 895 F.2d at 1480; *see also Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 437 (E.D. Pa. Dec. 7, 2015) (finding allegation that prison commissioner and warden adopted policy "without

11

oversight or meaningful review" was insufficient to establish that either were policymakers).

Summers also alleges an Eighth Amendment failure to prevent suicide claim against Weiner in his official and individual capacity based upon Correct Care's policies. "[A] plaintiff may state an Eighth Amendment claim against a supervisor based on policies or practices where the plaintiff alleges that the supervisors 'knew or were aware of and disregarded an excessive risk to the [plaintiff's] health or safety[.]'" *Palakovic*, 854 F.3d at 233 (quoting *Beers-Capital*, 256 F.3d at 135). Again, Summers fails to support her allegations of a policy with the necessary facts. Moreover, she insufficiently alleges that Weiner knew or was aware that the policies he established for Correct Care increased the risk of suicide. The Amended Complaint concludes that Weiner was aware that "placing seriously mentally ill prisoners such as McLeod in restricted housing units" increased their risk of suicide. (Am. Compl. ¶ 105.) The only factual support for this assertion is the claim that all Defendants should have been aware that the DOJ was investigating the Pennsylvania DOC's practice of placing mentally ill prisoners in restricted housing units. (*Id.* at ¶ 132.) Summers does not allege facts which could show that Weiner knew anything about such an investigation or that any such investigation included SCI-Graterford prior to McLeod's suicide. *See Palakovic*, 854 F.3d at 233 (discussing supervisor's awareness of the risks of solitary confinement based on prior experience and DOJ investigation of the specific facility where the decedent was incarcerated eight months prior to his suicide). In short, Summers's allegations against Weiner are insufficient because she fails to identify how

he knew or was aware that placing inmates in solitary confinement increased the risk of suicide, and despite having that knowledge, disregarded that risk.

D

Finally, Summers alleges Eighth Amendment failure to prevent suicide claims against Corizon, the company responsible for providing health care services at the City prisons, and Roman Point du Jour, Corizon's employee. *See* (Am. Compl. ¶¶ 14–17). The Court's June 26, 2017 Memorandum did not address Corizon or Point du Jour because they answered the Complaint. *See* (Answer, ECF No. 28). After Summers filed her Amended Complaint, Corizon and Point du Jour filed motions to dismiss. *See* (Mot. to Dismiss, ECF No. 45; Mot. to Dismiss, ECF No. 46). In her Amended Complaint, Summers alleges that Corizon and Point du Jour were involved in the decision to transfer McLeod, established policies or customs of "providing the absolute minimum of health and/or mental health care to inmates," and failed to ensure that inmates receive adequate mental health care treatment. (Am. Compl. ¶¶ 75, 98.)

None of Summers's allegations against Corizon and Point du Jour suffice to state an Eighth Amendment failure to prevent suicide claim. There is no factual support for the allegation that Corizon and Point du Jour were involved in the decision or had the authority to transfer McLeod to SCI-Graterford. Even if they were involved in that decision, however, their conduct does not rise to the level of deliberate indifference for the reasons explained in Section II.A.[8]

Summers also alleges Corizon and Point du Jour had a custom of providing inadequate health and mental health care treatment, again however without any

---

[8] Summers also fails to state a § 1983 claim against Corizon because she failed to identify a policymaker for Corizon, and the one-time decision to transfer McLeod is insufficient to constitute a custom for corporate liability under § 1983. *See Andrews*, 895 F.2d at 1480.

13

factual support which would render these allegations plausible on their face. In any event, these allegations are contradicted by Summers's contention that Corizon and Point du Jour were only responsible for providing health care treatment at the City prisons, (Am. Compl. ¶ 15), not mental health treatment in either the City prisons or SCI-Graterford.

III

Federal Rule of Civil Procedure 15 permits a party to amend its pleadings with the court's permission. Fed. R. Civ. P. 15(a)(2). Courts should grant leave to amend when justice so requires unless it would cause undue delay or undue prejudice, the request is in bad faith or a result of dilatory conduct, or if amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Summers was given leave to amend her complaint to cure the deficiencies identified in this Court's June 26, 2017 Memorandum and Order. Her Amended Complaint does not remedy the shortcomings previously identified by the Court and Summers has not sought leave to amend a second time. In any event, further amendment would at this point be futile. The claims against the individual City Defendants, MHM, Correct Care, Weiner, Corizon Health and Point du Jour are dismissed with prejudice. The case can now proceed against the individual Commonwealth Defendants and Wexford Health Sources, Inc.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.